*46 OPINION of the court, by
Judge Bibb.
M’Crac-kin’s heirs have appealed from a decree of the Woodford circuit court, made to the prejudice of their elder title at law, by supporting the following entry :
“ November 21st, 1786 — John Craig, assignee, enters 1000 acres of land on part of a treasury warrant, No. 19,410, between and adjoining George Moffett, Cyrus M’Crackin, Briscoe, assignee of Stewart, John Craig and Samuel Estill, on Glenn’s Creek.”'
George Moffett’s 1000 acres were surveyed on the 1st July 1773, by virtue of a military warrant, &c. and a grant therefor issue.d on the 11 th July 1780,
Cyrus M’Crackin’s settlement and pre-emption, were surveyed on the 25th of January 1783, on which grants issued on the 10th January in the year 1785..
John Briscoe’s 1000 acres, as assignee of Charles Stewart, were surveyed on the 1st of September 1783, the survey was registered on the 18th of October 1784, but the grant did not issue until the 26th of October 1790.
Samuel Estill’s 400 acres, were surveyed on the 9th of December 1782, for which a grant issued bearing date on the 8th-of February 1785.
The notoriety of these surveys at the date of the entry in question is well established.
400 acres preemption, to include a cabin, to be furveyed in square to the cardinal points, cabin in the middle: 200 acres joining thereto on S. W. and running S, W, for quantity, hovr to be surveyed, as in Crow’s heirs vs, Har„ rod's heir, Har. 435-
How an entry <( lying between and adjoining Mof-fett, M’Crack-in, Briscoe, Craig, and Es-till, on Glenn’s creek — ” to be furveyed.
Craig had'two claims — one on a fpecial Valid entry, but not surveyed — the other surveyed-only about two months before the entry in queftion,not notorious and the entry obscure, the valid entry of Craig was taken, as well on account of the want of notoriety of the survey, the obscurity of the entry and posi“ tion of the ci-ther claim.
*47 On the 26th April 1780, John Craig, as the assignee of a militar}7 warrant, &c. entered 200 aeres, “ — -joining Samuel Estill’s pre-emption on Glenn’s creek, on the southwest, and running the same course for quantity.”
Estill’s pre-emption is the claim surveyed and granted as before mentioned. Craig’s entry must be attached to Estill’s certificate of pre-emption of 400 acres, “ on Glenn’s creek, to include John Clarke’s cabin and improvement at a large spring.” John Clarke’s cabin and spring are identified, and the notoriety thereof since the year 1776, is well established. But it does not appear that any survey of this entry of Craig’s 200 acres, had been executed previous to the entry in question.
Glenn’s creek, on which, and its branches, all these entries and surveys lie, was notorious by that name as early as 1776, and ever since.
The relative positions of these claims form an area not entirely circumscribed by their lines, but yet concentrated very closely upon the quantity of land called for in the location. Such indeed are the situations of Mof-fett, M’Crackin, Briscoe, assignee of Stewart, and Estill, with respect to each other, as surveyed, that if the actual demarcations of boundary, rather that the ideal boundaries of the entries of the three latter, are to be understood as alluded to by the location, no subsequent locator, who candidly examined this entry for information, and not for mere cavil, could have hesitated to content himself with saying these are the claims called for, without searching for others lying without the limited neighborhood within which these had brought him. Although by discarding the calls for Briscoe, assignee of Stewart, and for Estill, the entry might be thrown entirely off the ground now occupied by the survey, and yet adjoin Moffett, M’Crackin, a claim represented on the plat as John Craig’s 387 1-2 acres, and indeed a claim represented as Briscoe’s, assignee of Rowe ; yet so to disregard those calls, when they can be complied with by reference to notorious corresponding subjects, would indeed be an arbitrary and unpardonable violence upon the entry.
One objection made to the entry is, that it has not designated which are to be adjoined, the entries or the surveys. As to those claims which were actually carried into grant, no doubt exists but that the claims as *48 granted are to be adjoined» Where an entry does hot in such ease expressly call to adjoin the entries, but uses the general expressions, as in the present, to adjoin certain persons by name, it must be considered as tantamount to a call for the land of such persons. The land granted, and not the land entered, where there is a variance, is in legal and common parlance, understood by the phrase A’s land. For the entry is merged in the grant, except where priority of adverse conflicting claims may become a question and render a resort to the entries necessary to determine that question. In like manner a survey which has been made and recorded so long as that all who will, may demand a copy, and moreover has become generally known, (as was the case of the survey of Briscoe, assignee of Stewart, when called for in the present case,) ought to be considered as alluded to by such general expressions. Actual boundaries and visible objects attract the attention and claim consideration in preference to ideal — the demonstrated, is taken in preference to the demonstrative. Surveys therefore should be presumed to be intended, rather than entries, where they stand in pari sensu et ceteris paribus. But much more shall the presumption be indulged, when the survey is notorious at the time the expression is used, and the entry is uncertain or obscure. For these considerations we think the proper understanding of the entry is, that the surveys of Moffett, M’Crackin, Briscoe, assignee of Stewart, and Estill, respectively, are to be adjoined. If the record had exhibited proof of the equal notoriety of the several claims in the name of John Craig, which are represented on the plat, yet the entry applied to the facts then existing, furnishes enough to determine which of those claims was intended. The order in which the claims are called for, induces an expectation, prima facie, that Craig was to lie in the way, or serve as a beacon in going from Briscoe to Estill. When such an intermediate claim, in the name of said Craig, located upon the southwest of this same Estill, was known to exist, or found upon reasonable enquiry, and serving as a leading string from ene intermediate call to another, and around towards the beginning, the locator who could have rejected this, and sought some other, out of this group of claims, thereby to distort the entry, would have acted with most uncandid and ill-judg-
Where objects, notorious and corresponding with the expressions in an entry, are exhibited $ the entry not deftroy-cd, by objects with corresponding names, but obscure and not as well adapted. Same principle Moiby & Craig vs. Car land, f>oft Whi. taker vs. Hall, fofi
Where the survey directed by court of appeals is variant from that di rected by court below, but includes all the land in controversy, the decree affirmed,
*0 t, George Moffett’s military survey of 1000 acres. S. Cyrus M’Crackin’s pre-emption. 4. His settlement. y, John Briscoe, assignee of Stewart. 5. Samuel Estill’s 400 acres, as surveyed and carried into grant. 5. Clarke’s cabin and spring. G. John Craig’s 200 acres constructed on the S. W. angle of Es-till’s 400 acres when laid off in a square to the cardinal points, about Clarke’s cabin. C. The land in controversy. 2. A survey of 100 acres made for John Craig, 4th September 1786, upon a vague entry. > 5* w o •ÍS c H 1_j
*49 ing vigilance. As the cabin and spring upon which Samuel Estill’s 400 acre pre-emption depended, was notorious, as before mentioned, the appendant claim of Craig was necessarily to be noticed by locators and holders of warrants. Estill’s pre-emption is rightly represented on the plat, with lines to the cardinal points, with Clark’s cabin at the intersection of the diagonals of a square area of 400 acres. But the manner of laying down Craig’s appendant claim is not properly represented. It should be surveyed by taking points equally distant from the southwest corner of Estill, as ,t directed, and on the southern and western boundaries thereof, so that a direct line between those points would be equal to the root of a square area of 200 acres, and from those points parallel lines should be extended south forty five degrees west, until a line at right angles to the projecting lines would include the quantity of said Craig’s entry ; thus adjoining said Estill on the southwest corner, that is to say, binding on a part of the southern and western boundaries thereof; according to the principle in the case of liar rod’s heir and Crow’s heirs.
Upon this view of the claims called to be adjoined, the entry in question is deemed valid. The survey should begin on the line of George Moffett’s military survey, where that line would be intersected by the southeastern boundary of Cyrus M’Crackin’s pre-emption survey (that is to say, the line represented on the plat by C. K.) if produced, thence with said produced line, and with the said line of M’Crackin’s pre-emption survey, and with the line of his settlement survey, to the corner common to M’Crackin’s said survey and that of Bris-coe, assignee of Stewart, (as represented on the plat by figure 13,) thence along the line of said Briscoe’s survey until intersected by the line of John Craig’s entry of 200 acres, surveyed on the southwest of Estill’s preemption, as before directed; thence along the said line of said Craig to the corner on said Estill’s pre-emption, as directed to be surveyed ; thence along the common boundary of said Estill’s pre-emption and the appendant entryofsaid Crab to the angle, and along the other common boundary of arose claims, due east to the survey of said Estill, as actually made and carried into grant; thence along the line thereof to the north-west corner, (repre- *50 seated on the plat by A.) thence along another line there* of to the northeast corner, (represented on the plat by B.) thence along another line thereof, so far that a line drawn from thence to intersect said Moffett’s line at right angles, and thence along Moffett’s line to the beginning, will include the quantity of one thousand acres.
But should the quantity require it, the intersection of Moffett’s line at right angles by the line drawn from said Estill’s survey, might be departed from, so as to embrace all the land lying west of a line drawn from said Estill’s southeast corner to said Moffett’s southwest corner (at M.) The land lying east of that line is not considered as being within the expressions of the location, “ between and adjoining,” &c. and therefore not to be included, although there should otherwise be a deficit.
"We consider the 100 acres represented on the plat as surveyed for John Craig on the 4th September 1786, as not affecting the entry in question, as well on account of the position thereof as on account of the want of notoriety, either by entry or survey. The appellees have exhibited objects notorious at the date of the entry in question and corresponding with the calls of the said entry under which they derive title ; the appellants have attempted to destroy the effect thereof by shewing other objects not as well adapted and not notorious : and although the survey directed by this court is in some degree variant from that which was acted on by the circuit court, yet the whole of the land in controversy is embraced by either survey. The appellants rely solely on their elder grant.-Decree affirmed.